UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| Annie White, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Schwan's Consumer Brands, Inc.,<br><br>Defendant | 2:23-cv-00147-BHL<br><br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Schwan's Consumer Brands, Inc. ("Defendant") manufactures, markets, and sells frozen apple pie promoted as containing a "Flaky Crust Made With Real Butter" under the Mrs. Smith's brand ("Product").

 

2. The front label contains pictures of two pats of fresh butter, one and a half apples, and a blue ribbon seal, emblematic of state fairs of lore.

## I. CONSUMERS VALUE BUTTER

3. Since the dawn of recorded history, humans have consumed butter, made from cream and salt, on a farm.

4. For the past 150 years, butter has competed against yellow-colored blends of vegetable oils.

5. These oils include canola oil, cottonseed oil, palm oil, and soybean oil.

6. According to the USDA, the last ten years have seen significant changes in consumer demand for butter and vegetable oils.

7. While per capita butter consumption reached its highest level in 50 years, six pounds per person per year, vegetable oil alternatives are at their lowest level since the 1940s, at three pounds.

8. There are several reasons for these changes.

9. First, according to consumer research firm Mintel, consumers are choosing butter over vegetable oils due to its "natural appeal" and a desire for minimally processed foods.

10. Butter is made by churning cow's milk, and contains only the natural ingredients of cream and salt.

11. In contrast, vegetable oils are considered ultra-processed foods ("UPF"), undergoing hydrogenation and interesterification, in the presence of chemical catalysts such as nickel and cadmium.

12. Second, consumers are more aware of the healthier profile of butter compared to vegetable oils.

13. Butter contains heart healthier fats, while vegetable oils contain harmful trans fats, a result of hydrogenation and interesterification.

14. Butter also has calcium, protein, and vitamins A and D while vegetable oils have no

comparable nutritional value because of the intense processing needed to render them palatable.

15. Third, consumers prefer the taste of butter to vegetable oil substitutes.

16. Butter is known for its creamy, smooth taste, and melts at mouth temperature.

17. While vegetable oils like are in theory heavily refined to provide a neutral taste, they are highly susceptible to oxidation and reversion back to their original "beany" and waxy taste.

## II. WISCONSIN HAS STRONG "CULTURE OF BUTTER"

18. Dairy is considered one of the most significant industries in Wisconsin, which is why its nickname and slogan is "America's Dairyland."

19. On a per capita basis, Wisconsin is the leading State in dairy production, which includes the processing of milk into cheese, butter and other dairy products.

20. This appreciation for dairy foods is reflected by the laws established by the legislature of Wisconsin to prevent the public from being misled as to the presence and use of dairy substitutes.

21. For instance, WI Stat. § 100.36 is entitled "Frauds; substitute for butter; advertisement."

22. This statute prohibits "use [of] the word 'butter' in any way in connection or association with the sale or exposure for sale or advertisement of any substance designed to be used as a substitute for butter."

23. It even prohibits "use [of] terms such as 'cream', 'creamery' or 'dairy', [] or any combination of such words and representation, or any other words or symbols or combinations thereof commonly used in the sale of butter unless at least 40 percent of the substitute is butterfat."

24. Finally, where "the term 'butter' is used in connection with the name of any such product, it shall be qualified so as to distinguish it from butter as defined in s. 97.01 (1r)."

25. WI Stat. § 97.18 contains "Oleomargarine regulations," and defines this to include "margarine, butterine and other similar substances, fats and fat compounds sufficiently adaptable to the ordinary uses of butter, to lead readily to use as an alternative to butter." WI Stat. § 97.18(1)(a).

26. While the state definition of margarine exempts shortenings, this does not apply when such shortening contains "any compound which, when mixed with such shortening, makes oleomargarine, butterine or similar substances," such as what Defendant uses in place of butter.

27. State law even prohibits the sale of margarine unless "the word 'oleomargarine' or 'margarine' in type or lettering at least as large as any other type or lettering on the label in a color of print which clearly contrasts with its background." WI Stat. § 97.18(1)(c).

28. Wisconsin is unique among the 50 states as the only one with a butter-grading requirement, enforced by the Department of Agriculture, Trade and Consumer Protection ("DATCP"), to prevent its consumers from being misled by lower quality butter and butter alternatives.

### III. "MADE WITH REAL BUTTER" MISLEADING

29. All baked goods contain shortening ingredients, which refers to a solid type of fat which imparts a "short" or tenderizing effect.

30. Consumers generally consider a pie's crust as their favorite part of a pie.

31. The most important attribute of a pie crust is its flakiness, with numerous layers of dough and sturdy enough to not become chewy or mealy from the fruit fillings.

32. Pie crusts are typically comprised of flour, salt, water, and shortening, which refers to a solid type of fat.

33. The amount and type of fat used is significant because it has the greatest impact on

flavor and texture.

34. The fat ingredients tenderize pie crust by coating flour proteins in the dough and physically interfering with the development of gluten.

35. The fats used contribute to whether a crust is flaky, because the solid pieces of fat melt, creating air pockets and steam, separating the dough.

36. Butter is known for producing a flaky pie crust in part because of its water content.

37. When butter is cut into dough, it creates tiny beads or flakes, preventing excess water from absorbing into the flour.

38. When a pie is heated, the butter melts, creating air pockets and releasing its water content.

39. Because one part of water creates 1,600 parts of steam, the steam separates and expands the surrounding dough, resulting in the ideal flaky crust.

40. Though the front label prominently states the crust is "MADE WITH REAL BUTTER," consumers are misled because its primary shortening ingredient is "Palm Oil," shown in the fine print of the side panel in the ingredient list as part of an ingredient called "Shortening Butter Blend."

**CRUST:** WHEAT FLOUR, SHORTENING BUTTER BLEND (PALM OIL, BUTTER [CREAM, SALT]), PALM OIL, WATER, SOYBEAN OIL, SALT, DEXTROSE, YEAST, MONO- AND DIGLYCERIDES, APPLE JUICE CONCENTRATE.



**CRUST:** WHEAT FLOUR, SHORTENING BUTTER BLEND (PALM OIL, BUTTER [CREAM, SALT]), PALM OIL, WATER, SOYBEAN OIL, SALT, DEXTROSE, YEAST, MONO- AND DIGLYCERIDES, APPLE JUICE CONCENTRATE.

41. Contrary to what consumers read, the second most predominant shortening ingredient is not "Butter," even though this is listed after "Palm Oil."

42. The amount of butter is de minimis or negligible, in absolute and relative amounts to the shortening ingredients used.

43. The ingredient list fails to list the ingredients by their common or usual name and by descending order of predominance by weight, contrary to federal and identical state requirements. 21 C.F.R. § 101.4(a)(1).

44. Though exceptions exist for listing multi-component ingredients, they are not applicable.

45. The first exception is where an ingredient contains two or more component ingredients and has a common or usual name or a standard of identity. 21 C.F.R. § 101.4(b)(2).

46. No established common or usual name or standard of identity exists for "Shortening Butter Blend."

47. The second exception is relevant where a shortening ingredient is entirely from one

source, such as vegetable, animal, or marine. 21 C.F.R. § 101.4(b)(14).

48. Since "Shortening Butter Blend" is a combination of vegetable and animal fats, it is not permitted to be listed as its own ingredient.

49. If "Butter" were listed in order of predominance by weight as required, it would not be the fourth ingredient, but closer to the least predominant ingredient.

50. In fact, the Product contains more soybean oil, water, and salt than butter, even though butter is ahead of these ingredients.

51. This conclusion is based in part on analysis of the Nutrition Facts and ingredient list, based on the amount of nutrients and vitamins commonly found in butter.

52. By replacing butter with the vegetable oil shortenings of palm oil and soybean oil, the Product's crust lacks the nutritional, structural (i.e., flaky crust), organoleptic, and sensory attributes that consumers expect from a label indicating it is "Made With Real Butter."

53. Butter is more costly than vegetable oil shortenings of palm oil and soybean oil, and the expectation of a greater amount of this ingredient was misleading.

Jurisdiction and Venue

54. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

55. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

56. Plaintiff is a citizen of Wisconsin.

57. Defendant is a Georgia corporation with a principal place of business in Bloomington, Hennepin County, Minnesota.

58. The class of persons Plaintiff seeks to represent includes persons who are citizens of

different states from which Defendant is a citizen.

59. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold at thousands of locations including grocery stores, warehouse club stores, drug stores, big box stores, and online across this State.

60. Venue is in this District, with assignment to the Milwaukee Division, because a substantial part of the events or omissions giving rise to these claims occurred in Kenosha County, including Plaintiff's purchase, transactions, consumption and/or use of the Product and exposure to, awareness and/or experiences of and with the issues described here.

Parties

61. Plaintiff Annie White is a citizen of Kenosha, Kenosha County, Wisconsin.

62. Defendant Schwan's Consumer Brands, Inc., is a Georgia corporation with a principal place of business in Bloomington, Hennepin County, Minnesota.

63. Defendant manufactures and markets Mrs. Smith's frozen pies.

64. Founded over a century ago in rural Pennsylvania by homemaker Amanda Smith, Mrs. Smith's is one of the largest frozen pie brands in the United States.

65. Originally sold door-to-door by her immediate family and at local lunch counters, the success of her homemade pies resulted in rapid expansion.

66. Like Mrs. Smith's, Schwan's began selling homemade, frozen foods as a local delivery company in rural Minnesota.

67. The success of Schwan's offerings resulted in numerous brands that would become staples of American kitchens.

68. Plaintiff is like the majority of consumers who prefer butter to vegetable shortening ingredients when consuming baked goods, for the reasons indicated above.

69. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walmart, 3500 Brumback Blvd, Kenosha, WI 53144, between 2021 and 2023, among other times.

70. Plaintiff relied on the front label statement that the Product's crust was "Made With Real Butter" and the two pats of butter to expect butter was its predominant shortening ingredient or was present in a non-de minimis amount.

71. As a result of the false and misleading representations, the Product is sold at premium price, approximately not less than $6.39 per pie, excluding tax and sales.

72. Plaintiff bought the Product at or exceeding the above-referenced price.

73. Plaintiff paid more for the Product, would have paid less or not have purchased it had she known the representations and omissions were false and misleading with respect to the relative amount of butter used.

74. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

75. Plaintiff chose between this Product and others represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

76. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

77. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other pies promoting butter because she is unsure whether those representations are truthful.

78. If Defendant's labeling were to be truthful, Plaintiff could rely on the labeling of other pies items promoting butter.

## Class Allegations

79. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **Wisconsin Class:** All persons in Wisconsin who purchased the Product during the statutes of limitations for each cause of action alleged.

80. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

81. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

82. Plaintiff is an adequate representative because her interests do not conflict with other members.

83. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

84. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

85. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

86. Plaintiff seeks class-wide injunctive relief because the practices continue.

## Wisconsin Unfair Trade Practices Act ("UTPA"), Wis. Stat. § 100.20

87. Plaintiff incorporates by reference all preceding paragraphs.

88. The representations on the Product constitute an advertisement to the public.

89. Plaintiff read and relied on the labeling and believed the Product's crust contained a non-de minimis and/or predominant amount of butter relative to vegetable oil shortenings.

90. The representation of the Product's crust as "Made With Real Butter" violates Wis. Stat. § 100.183(1) because that advertisement is untrue, deceptive or misleading.

91. The representation of the Product's crust as "Made With Real Butter" violates Wis. Stat. § 97.02 because the valuable constituent of butter has been in part omitted and substituted with vegetable oils, reducing its quality.

92. The representation of the Product's crust as "Made With Real Butter" violates Wis. Stat. § 97.03 because this statement is false and misleading because the predominant crust ingredient is not butter but vegetable shortening.

93. Under Wis. Stat. § 97.07, in evaluating whether a product's labeling is misleading, there must be considered not only the statements made but also the extent to which the labeling fails to reveal material facts in light of such representations.

94. By promoting the crust as "Made With Real Butter," the labeling fails to reveal the amount of butter is de minimis and/or significantly less than the amount of butter alternatives in the form of vegetable shortening.

95. Wis. Stat. § 100.20(5) permits "[A]ny person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction."

96. Defendant violates Wis. Admin. Code § ATCP 90.10(1) because the Product is not labeled in compliance with the applicable FDA rules and regulations, which prohibit representations which are false and misleading.

97. Plaintiff suffered a pecuniary loss due to Defendant's violation of Wis. Admin. Code §§ ATCP 90.02 and 90.10 among other provisions.

98. In the alternative, Plaintiff brings her claim pursuant to Wis. Stat. 100.18.

## Breach of Express Warranty and
## Implied Warranty of Merchantability/Fitness for a Particular Purpose

99. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that its crust contained a non-de minimis and/or predominant amount of butter relative to vegetable oil shortenings.

100. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

101. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

102. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that its crust contained a non-de minimis and/or predominant amount of butter relative to vegetable oil shortenings.

103. Defendant's representations affirmed and promised the Product's crust contained a non-de minimis and/or predominant amount of butter relative to vegetable oil shortenings.

104. Defendant described the Product so Plaintiff believed its crust contained a non-de minimis and/or predominant amount of butter relative to vegetable oil shortenings, which became part of the basis of the bargain that it would conform to its affirmations and promises.

105. Defendant had a duty to disclose and/or provide non-deceptive descriptions of the Product.

106. This duty is based on Defendant's outsized role in the market for this type of Product, custodian of the Mrs. Smith's brand.

107. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

108. Plaintiff provides or will provide notice to Defendant, its agents, representatives,

retailers, and their employees that it breached the Product's express and implied warranties.

109. Since the filing of the Complaint, Defendant has not attempted to cure or address the breach identified by Plaintiff.

110. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, non-profit organizations, competitors, and/or consumers, to its main offices, and by consumers through online forums.

111. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

112. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if its crust contained a non-de minimis and/or predominant amount of butter relative to vegetable oil shortenings.

113. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected its crust contained a non-de minimis and/or predominant amount of butter relative to vegetable oil shortenings.

## Fraud

114. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that its crust contained a non-de minimis and/or predominant amount of butter relative to vegetable oil shortenings.

115. Defendant knew the importance of butter and how the truthful labeling of butter and products containing butter was significant to consumers in this State.

116. Defendant knew the relevant state laws implicated by its labeling which expressed a public policy that was against passing off products that are made mostly with butter substitutes as being predominantly or significantly made from butter.

117. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

## Unjust Enrichment

118. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Injunctive relief to correct and/or refrain from the challenged practices and representations;
3. Awarding monetary, statutory and/or punitive damages, restitution, and interest;
4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
5. Other and further relief as the Court deems just and proper.

Dated: June 27, 2023

Respectfully submitted,

/s/Spencer Sheehan

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com