UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANNIE WHITE,

        Plaintiff,

v.                                                  Case No. 23-cv-0147-bhl

SCHWANS CONSUMER BRANDS INC,

        Defendants.

## ORDER GRANTING MOTION TO DISMISS

In this putative class action, Plaintiff Annie White alleges that Defendant Schwan's Consumer Brands, Inc. (Schwan's) defrauded consumers by selling frozen pies with packaging stating the pies were "made with real butter." Plaintiff concedes the pies are indeed made with some real butter but contends the labeling is nonetheless misleading because she expected what she calls more than a "de minimis" amount of butter in the product. In her amended complaint, Plaintiff seeks to represent a class of Wisconsin consumers in pursuing damages and injunctive relief based on claims for: (1) a violation of Wis. Stat. § 100.20; (2) breach of warranty; (3) common-law fraud; and (4) unjust enrichment. (ECF No. 7.) Schwan's has moved to dismiss, arguing that its product labeling is not misleading or fraudulent as a matter law and that Plaintiff's suggestion otherwise is based on an unreasonable reading of the label. (ECF No. 8.) In responding to the motion, Plaintiff has withdrawn her implied warranty and unjust enrichment claims, as well as her request for injunctive relief. (ECF No. 9 at 7 n.1.) But Plaintiff persists with her other claims. Having reviewed the pleadings and the relevant law, the Court agrees with Schwan's that the amended complaint does not allege plausible claims. Accordingly, Schwan's motion will be granted and Plaintiff's claims dismissed.

## BACKGROUND[1]

Plaintiff is a citizen of Kenosha, Wisconsin. (ECF No. 7 ¶61.) Defendant Schwan's is a Georgia corporation with its principal place of business in Bloomington, Minnesota. (*Id.* ¶57.)

---

[1] This Background is derived from White's amended complaint, (ECF No. 7), the allegations in which are presumed true for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

Among other things, Schwan's "manufactures, markets, and sells frozen apple pie" under the "Mrs. Smith's" label. (*Id.* ¶1.) The packaging promotes Mrs. Smith's pies as using an "original flaky crust made with real butter." (*Id.*) The label also pictures "two pats of fresh butter" and "a blue ribbon seal, emblematic of state fairs." (*Id.* ¶2.)

Plaintiff alleges that butter is particularly desirable and emphasizes at length what she calls Wisconsin's strong "culture of butter." (*See id.* ¶¶3–28.) She contends that butter has a "natural appeal," "healthier profile," and "cream[ier], smooth[er] taste" than vegetable shortening. (*Id.* ¶¶9, 12, 15–17.) Given what she considers the natural advantages of butter, she alleges that she, "like the majority of consumers," prefers "butter to vegetable shortening" in her baked goods. (*Id.* ¶68.) She claims to have relied on the packaging that Mrs. Smith's pies are "made with real butter" and its depiction of "the two pats of butter" when she purchased Schwan's pies at least once between 2021 and 2023 at a Walmart in Kenosha, Wisconsin. (*Id.* ¶¶69, 70.) The statements and photo led her to expect butter was present in what she calls "a non-de minimis amount." (*Id.* ¶70.) She further asserts that the primary shortening ingredient in the pie crust is actually palm oil, based on the ingredient listing of "shortening butter blend," which puts palm oil as its first ingredient. (*Id.* ¶40.) She alleges that even though butter is listed second after palm oil as a part of this blend, the product has only a de minimis amount as determined after a nutritional and ingredient analysis "based on the amount of nutrients and vitamins commonly found in butter." (*Id.* ¶¶41, 42, 51.) This use of only a small amount of butter allegedly makes Mrs. Smith's apple pie lack the "nutritional, structural (i.e., flaky crust), organoleptic, and sensory attributes" she would expect from a statement like "Made with Real Butter." (*Id.* ¶52.)[2]

Plaintiff claims she paid at least $6.39 for each of the pies she purchased and proclaims she "would have paid less"—or not bought the pies at all—had she known the true butter content of the pies' crusts. (*Id.* ¶¶71–73.) As a result of this deception, she also claims she "is unable to rely on the labeling and representations" of not only Mrs. Smith's apple pies, but all other pies that promote butter. (*Id.* ¶77.)

---

[2] Plaintiff's assumption that butter is necessarily the superior fat to use in making a pie crust is questionable. Pastry chefs have long debated whether shortening, butter, or lard (or some combination of them) results in the "best" pie crust. *See* Rhoda Boone, *Shortening vs. Butter: Which Fat Makes the Best Pie Crust?*, epicurious (Oct. 25, 2017), https://www.epicurious.com/expert-advice/shortening-vs-butter-for-pie-crusts-lard-which-is-better-article. There is likely no right answer to the riddle; each ingredient has its own benefits and drawbacks, leading to different results in terms of preferred flavor and texture. *Id*.

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 564–65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Id.* at 565 (citing *Iqbal*, 556 U.S. at 678).

## ANALYSIS

Plaintiff's amended complaint seeks damages and injunctive relief based on four claims: a violation of Wis. Stat. § 100.20; breach of express warranty and implied warranty of merchantability and fitness for a particular purpose; common-law fraud; and unjust enrichment. (ECF No. 7 ¶¶87–118.) Schwan's has moved to dismiss all four claims. (ECF No. 8.) Plaintiff opposes the motion only with respect to her Section 100.20, express warranty, and common-law fraud claims. For the reasons stated below, the Court will grant the motion and dismiss the amended complaint.

### I. Plaintiff Fails to State a Claim Under Wis. Stat. § 100.20.

Plaintiff's first cause of action is premised on an alleged violation of Wis. Stat. § 100.20, which prohibits "unfair methods of competition" and "unfair trade practices" in business. The circumstances in which this statute creates a private right of action are limited. Before addressing Plaintiff's Section 100.20 claim, the Court will try to unpack the statutory and regulatory bases and caselaw discussing the situations in which a private right of action arises.

By its plain terms, Section 100.20 forbids certain practices that are expressly deemed unfair. *See* Wis. Stat. § 100.20(1m)–(1v). The statute also authorizes the Wisconsin Department of Agriculture, Trade and Consumer Protection (ATCP) to issue "general" and "special" orders forbidding other methods of competition and trade practices that it determines to be unfair. § 100.20(2)–(3); *see also Tropp v. Prairie Farms Dairy, Inc.*, No. 20-cv-1035, 2021 WL 5416639,

at *2 (W.D. Wis. Nov. 19, 2021); *Emergency One, Inc. v. Waterous Co.*, 23 F. Supp. 2d 959, 971 (E.D. Wis. 1998).

Against this backdrop, the statute provides for a limited private right of action. Not every plaintiff who subjectively believes that he or she has been on the wrong end of an unfair method of competition or unfair trade practice can file suit. *See Emergency One*, 23 F. Supp. 2d at 971–72. Rather, Section 100.20 provides for a private right of action only for violations of "orders" issued by ATCP pursuant to its authority under the statute. Section 100.20(5) provides:

> Any person suffering pecuniary loss because of a violation by any other person of [Wis. Stat. § 100.70] or any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney fee.

Courts have shown some confusion over the circumstances in which Section 100.20 allows a plaintiff to sue for alleged violations of the statute. *See Castle v. Kroger Co.*, 634 F. Supp. 3d 539, 550–52 (E.D. Wis. 2022) (discussing varying approaches to scope of private right of action under Section 100.20). Indeed, many (perhaps all) of the reported cases applying Section 100.20 involve claims based not on violations of ATCP *orders*, as described in the statute, but based on violations of ATCP *regulations*. *See, e.g.*, *Emergency One*, 23 F. Supp. 2d at 971; *Castle*, 634 F. Supp. 3d at 554; *see also Tropp*, 2021 WL 5416639, at *2; *Loeb v. Champion Petfoods USA, Inc.*, No. 18-CV-494-JPS, 2018 WL 2745254, at *1, *7 (E.D. Wis. June 7, 2018). That approach is questionable given that a general order is not necessarily the same thing as a regulation and the statute speaks only to the former, not the latter. In the context of a criminal prosecution, the Wisconsin Court of Appeals has held that an ATCP regulation (Wis. Admin. Code ATCP § 134.06 governing security deposits) falls within the ambit of Section 100.20(2)(a). *See State v. Lasecki*, 946 N.W.2d 137, 146 (Wis. Ct. App. 2020). The court of appeals justified this reading on the theory that both ATCP rules and regulations are promulgated as the result of "orders of the respective department adopting such rules or regulations." *Id.* But that an order exists somewhere in the stream of a regulatory enactment does not logically make the final regulation an order. At least one court has questioned whether an ATCP order is synonymous with an ATCP regulation. *See Stoller v. Walworth County*, No. 17-CV-1340-JPS, 2020 WL 3618453, at *5 (E.D. Wis. July 2, 2020) ("There is no evidence in the record of an order from the Department of Agriculture, Trade and Consumer Protection to the [] Defendants, nor is there evidence of the [] Defendants violating the same."). Making things even more confusing, some ATCP regulations are published

as actual "Orders." *See* Potato Marketing Order, Wis. Admin. Code ATCP ch. 149 (not to be confused with the Potato Marketing Agreement, Wis. Admin. Code ATCP ch. 151). If ATCP specifically designates some regulations as orders, it suggests that those regulations not so designated are not orders.

Still more confusion arises from the sheer number of ATCP regulations and the agency's general failure to identify whether a particular regulation (assuming it counts as an order) was "issued" under its Section 100.20 authority. The Wisconsin legislature has given the agency a broad remit and its authority derives from multiple statutory sources. Indeed, ATCP's regulations range from Chapters 1 through 166 in the Wisconsin Administrative Code, covering such diverse areas as Local Rabies Control Programs (ATCP Chapter 13), Bed and Breakfast Establishments (ATCP Chapter 73), Cherry Marketing (ATCP Chapter 141), and the now-repealed Woody Biomass Harvesting and Processing Credit (ATCP Chapter 166). ATCP's authority to issue these wide-ranging regulations derives not just from Section 100.20, but also from Sections 93.547(4), 95.21, 97.625, and 96.03, among other statutory delegations.

The agency is not always clear about which source of its authority supports a given regulation. In *Gallego v. Wal-Mart Stores, Inc.*, 707 N.W.2d 539 (Wis. Ct. App. 2005), a plaintiff attempted to bring a private cause of action under Section 100.20(5) based on an alleged violation of Wis. Admin. Code ATCP § 90.10, which regulates food labeling. The Wisconsin Court of Appeals resolved this ambiguity by deeming *every ATCP regulation* as being issued under Section 100.20. The court of appeals relied upon an Editor's Note[3] preceding Chapter 90 of the ATCP regulations stating that the regulations in the chapter were adopted under ATCP's authority under eight different statutory sections and subsections. The court interpreted this notation as showing that the agency viewed its authority for Chapter 90's regulations "as flowing from numerous, overlapping statutory directives, one of which is" Section 100.20(2)(a) and concluded that this view allowed plaintiffs to sue under Section 100.20(5) for any violation of an ATCP regulation under Chapter 90. *Id.* at 547. The court explained that this broad reading of the agency's

---

[3] It is not entirely clear who authors the notes accompanying the ATCP's published regulations. A likely suspect is the Wisconsin Legislative Reference Bureau, a nonpartisan organization that provides legal advice to the state legislature. It is responsible for drafting and publishing state legislation and regulations. *See* Wisconsin Legislative Reference Bureau, https://legis.wisconsin.gov/lrb (last visited March 14, 2024). It seems questionable to interpret the scope of enacted legislation, like Section 100.20(5), based on regulatory commentary added by someone other than the agency and not subject to rulemaking procedures. This makes the ongoing debate over *Chevron* deference in federal law circles seem tame in comparison.

regulations prevailed absent indication from ATCP that a particular regulation was not subject to Section 100.20(5). *Id*. It then curiously concluded that the agency had "not do[ne] so" with respect to the regulation at issue, Section 90.10, even though *a note to that specific regulation* states that it was "adopted under [Wis. Stat.] § 97.09(4)," without any reference to Section 100.20. *Id.* at 547–48. The Wisconsin Supreme Court granted a petition to review this decision, but the case settled. *See Gallego v. Wal-Mart Stores, Inc.*, No. 2004AP2533, 712 N.W.2d 34 (Wis. Jan. 20, 2006) (unpublished table decision).[4]

Against this confusing backdrop, Plaintiff seeks to pursue a private action against Schwan's under Section 100.20, contending that its labeling of Mrs. Smith's apple pies violates two ATCP regulations—Wis. Admin. Code ATCP §§ 90.10(1) and 90.02. For purposes of this motion, the Court will assume without deciding that both regulations constitute "general orders" and were "issued under this section" within the meaning of Section 100.20, although Plaintiff's pleadings and briefing offer little support for either assumption. The assumptions are of no moment, because, as discussed below, Plaintiff's claims fail regardless.

### A. Plaintiff's Allegations Do Not Support a Violation of Wis. Admin. Code ATCP § 90.10(1).

In Wis. Admin. Code ATCP § 90.10(1), ATCP adopts state food labeling regulations tied to federal FDA requirements. The ATCP regulation provides that "food sold or distributed for sale in [Wisconsin] shall be labeled in compliance with applicable rules adopted by the United States food and drug administration under 21 C.F.R. [pts.] 101, 102, 104, 105, and 130." Thus, to establish a violation of Section 90.10(1), Plaintiff must establish a violation of the referenced federal regulations. Plaintiff alleges that Schwan's violated 21 C.F.R. § 101.4(a)(1), (b)(2), and (b)(14). (*See* ECF No. 7 ¶¶ 43, 45, 47.)

Under 21 C.F.R. § 101.4(a)(1), ingredients must "be listed by common or usual name in descending order of predominance by weight." Section 101.4(b) generally requires ingredient names to "be a specific name and not a collective (generic) name." The FDA excepts from this general rule "[a]n ingredient which itself contains two or more ingredients and which has an established or common name . . . or conforms to a definition and standard of identity . . . ." 21

---

[4] The same Editor's Note cited in *Gallego* also provides that violators of Chapter 90 regulations are subject to penalties and remedies under seven different statutory provisions, including Section 100.20(5). If the *Gallego* court's mix-and-match rationale applies to this provision too, an aggrieved plaintiff would seem to have ample options to choose from in terms of remedies. This would expand the statutory remedies well beyond the terms of these separate pieces of legislation.

C.F.R. § 101.4(b)(2). Such an ingredient "shall be designated in the statement of ingredients on the label of such food" by either declaring that common name of the ingredient "followed by a parenthetical listing of all ingredients contained therein in descending order of predominance" or by simply listing all of the ingredients in descending order of predominance without listing the ingredient itself. *Id*. The regulation also excepts blends of fat, like shortening, which may also be designated in their order of predominance "as '____ shortening' or 'blend of ____ oils'" where the blank is filled in with the applicable term, so long as immediately following the term, "the common or usual name of each individual vegetable, animal, or marine fat or oil is given in parentheses." *Id.* § 101.4(b)(14).

Schwan's insists that the Mrs. Smith's pies' labels do not violate ATCP Section 90.10 because the labels are consistent with the FDA regulations in 21 C.F.R. § 101.4(a)(1) and (b)(14). (ECF No. 8 at 17.) Schwan's explains that the pie label lists the "shortening butter blend" immediately followed by the common name of each individual vegetable or animal fat in parentheses, satisfying 21 C.F.R. § 101.4(b)(14). It also argues that there is no factual basis for the claim that the ingredient list does not list the ingredients in order of predominance by weight as required by 21 C.F.R. § 101.4(a)(1). Plaintiff, for her part, insists that her complaint alleges that the second most predominant shortening ingredient is not butter, which she claims violates 21 C.F.R. § 101.4(a)(2) and that the exceptions do not apply because shortening butter blend, as a combination of vegetable and animal fats, cannot be its own ingredient under 21 C.F.R. § 101.4(b)(2) or (14). (ECF No. 9 at 14.)

Plaintiff's argument fails because she misreads and seeks to rewrite the FDA regulation. Nothing in 21 C.F.R. § 101.4 requires "shortening butter blend" to be entirely vegetable or animal fat, nor does it require "shortening butter blend" to be a common or usual name. In fact, the regulation contemplates novel blends of fat and oils as long as the ingredients are listed in order of predominance. Schwan's pie lists "shortening butter blend (palm oil, butter [cream, salt])" as the second ingredient. (ECF No. 7 ¶40.) Plaintiff's assertion that the product contains more "soybean oil, water, and salt" than butter is of no import to the shortening butter *blend*, because the blend contains neither water nor salt. (*Compare id. with* ¶50.) All that matters is that butter is the second most predominant ingredient in the blend, and Plaintiff has not alleged that it is not. The shortening butter blend therefore is in compliance with 21 C.F.R. § 101.4 and by extension, ATCP Section 90.10(1).

### B. Plaintiff's Allegations Do Not Support a Violation of Wis. Admin. Code ATCP § 90.02.

ATCP Section 90.02 states that "[n]o person may sell or distribute a consumer commodity in package form unless each package clearly and conspicuously identifies the commodity contained in that package." ATCP § 90.02(1). It requires that declaration to "identify the commodity by its common or usual name, by its legally required name, if any, or by a generic name or other appropriate description that is readily understood by consumers." *Id.* That declaration of identity has to be prominently featured, in English, and in contrasting color. *Id.* § 90.02(2). It also prohibits false, deceptive, or misleading declarations. *Id.* § 90.02(3). "Ingredients or components that are not present in the commodity in substantial or significantly effective amounts may not be featured in the declaration of identity." *Id.* Plaintiff invokes ATCP Sections 90.02(1) and (3).

The parties largely ignore ATCP Section 90.02(1) in their pleadings and briefing. Plaintiff cites the regulation only once in her amended complaint, alleging she "suffered a pecuniary loss due to Defendant's violation" of the regulation. (ECF No. 7 ¶97.) She also generally asserts that the pie labeling's "ingredient list fails to list the ingredients by their common or usual name . . . contrary to federal and identical state requirements." (*Id.* ¶43 (citing 21 C.F.R. § 101.4(a)(1).) This is not enough to state a claim for failure to state the product's declaration of identity. *See Tropp*, 2021 WL 5416639, at *3. The pie clearly and conspicuously identifies the commodity in the package: an apple pie. (*See* ECF No. 7 ¶1.) Plaintiff does not dispute this fact. Thus, her invocation of ATCP Section 90.02(1) fails to state a claim.

Plaintiff's invocation of ACTP Section 90.02(3) fares no better. Both sides seem to agree that the product's declaration of identity is "Apple Pie Made with Real Butter." Schwan's maintains that "Made with Real Butter" does not imply a certain amount of butter in the product, especially when the ingredient list accurately lists the ingredients in order of predominance. (ECF No. 8 at 11–12.) Plaintiff counters that it is reasonable to expect a "non de-minimis amount of butter" in the product. (ECF No. 9 at 8.) Plaintiff relies on *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020), to argue that literally true claims like "Made with Real Butter" can be actionable as misleading when they convey false impressions. (ECF No. 9 at 9.)

Plaintiff misreads *Bell*; that case does not broadly allow a plaintiff to maintain a deceptive advertising claim by unilaterally maintaining that he or she was subjectively confused by an accurate label. In *Bell*, the Seventh Circuit reversed the dismissal of deceptive advertising claims

arising from labeling that indicated a product contained "100% Grated Parmesan Cheese." 982 F.3d at 473. The district court had dismissed the claim because fine print on the back of the label clarified that the product actually contained between 4 and 9 percent of additives. *Id.* The Court of Appeals concluded the claim should have survived a motion to dismiss because the prominent "100%" label might have "deceiv[ed] a substantial portion of reasonable consumers," even if the back label accurately listed the ingredients. *Id.* at 473–74. Significant to this determination was the numerical value of "100%" on the product's label. But the Court of Appeals emphasized that "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels . . . dismissal on the pleadings may well be justified." *Id.* at 477. Thus, contrary to Plaintiff's insistence, *Bell* is not a license for plaintiffs' lawyers to pursue deceptive advertising claims based on implausible theories of confusion in the face of literally true labeling.

Several district courts in this circuit have concluded that a reasonable consumer does not expect a particular amount of an ingredient when the packaging indicates that the product generally contains a specific ingredient. *See Ledezma v. Upfield US Inc.*, No. 22 C 1618, 2022 WL 16553039, at *5 (N.D. Ill. Oct. 31, 2022) (dismissing complaint alleging "I Can't Believe It's Not Butter!" product containing the description "with olive oil" on front label deceptive); *Tropp*, 2021 WL 5416639, at *4 n.4 (dismissing complaint alleging "premium vanilla bean ice cream" deceptive); *Floyd v. Pepperidge Farm, Inc.*, 581 F. Supp. 3d 1101, 1109 (S.D. Ill. 2022) (dismissing complaint alleging "Golden Butter" crackers mislead consumers that crackers contained no butter substitutes); *Cerretti v. Whole Foods Mkt. Grp., Inc.*, No. 21 CV 5516, 2022 WL 1062793, at *2–4 (N.D. Ill. Apr. 8, 2022) (dismissing complaint alleging "Dipped in Organic Chocolate" ice cream bars contained more non-chocolate ingredients than chocolate).

Indeed, another court has already rejected claims against Schwan's based on this same labeling. In *Barnett v. Schwan's Consumer Brands, Inc.*, No. 22-cv-2178-SMY, 2023 WL 6216955, at *1 (S.D. Ill. Sept. 25, 2023), the Southern District of Illinois dismissed the plaintiff's claim that Schwan's Mrs. Smith's apple pie misrepresented to consumers that it is "Made with Real Butter." *Barnett* specifically held that "a reasonable consumer could not take ["Made with Real Butter"] to mean that the product necessarily contains a particular amount of butter or more butter than other shortening ingredients, let alone the unspecified greater amount of butter expected by" White. *Id.* at *3 (citing *Rice v. Dreyer's Grand Ice Cream, Inc.*, 624 F. Supp. 3d 922 (N.D.

Ill. 2022)). Thus, the plaintiff failed "to adequately plead that the label is deceptive as to the amount of butter in the product." *Id.* (citing *Ledezma*, 2022 WL 16553039, at *3–5).

This Court agrees with the analysis in *Barnett*. No reasonable consumer would find Schwan's labeling deceptive. Accordingly, Plaintiff's ATCP Section 90.02(3) claim also fails.

## II. Plaintiff Also Fails to State a Claim for Breach of Warranty.

Plaintiff's second cause of action is for breach of warranty. She claims that Schwan's pie was manufactured, identified, marketed, and sold by Schwan's and expressly warranted that "its crust contained a non-de minimis and/or predominant amount of butter relative to vegetable oil shortenings." (ECF No. 7 ¶99.) Plaintiff alleges that she "provides or will provide notice to Defendant . . . that it breached the Product's express . . . warrant[y]." (*Id.* ¶108.) She also asserts that Schwan's received notice and should have been aware of these issues because other parties filed complaints to Schwan's main offices as did "consumers through online forums." (*Id.* ¶110.) Leaving to one side that nothing in the labeling suggests the express warranty that Plaintiff asserts, Schwan's argues this claim fails on a procedural ground, based on Plaintiff's failure to provide pre-suit notice of a breach of warranty claim. (ECF No. 8 at 19 (citing Wis. Stat. § 402.607(3)(a).)

Wisconsin law provides that a buyer must notify the seller of a nonconforming good within a reasonable time of discovering the breach of warranty, "or be barred from any remedy." Wis. Stat. § 402.607(3)(a). As the Wisconsin Supreme Court has explained, this notice requirement serves to eliminate the "element of unfair surprise" where a seller is sued for breach of warranty without having received the reasonable notice of the alleged breach. *See Paulson v. Olson Implement Co.*, 319 N.W.2d 855, 861 n.8 (Wis. 1982). Schwan's contends that Plaintiff failed to provide notice of any alleged breach of warranty prior to suit and the claim must therefore be dismissed. (ECF No. 8 at 19–20.)

In opposition, Plaintiff does not argue that she gave notice before suing; instead she insists that her filing of this action in June 2023 was itself sufficient notice. (ECF No. 9 at 15.) She argues that no Wisconsin court has specifically held that notice must necessarily occur pre-suit to be reasonable under the statute. (*See* ECF No. 9 at 15); *see also Castle*, 634 F. Supp. 3d at 563 (collecting cases). Plaintiff's theory is inconsistent with well-established principles of the Uniform Commercial Code and would undercut the statutory notice requirement. Wis. Stat. § 402.607(3)(a) is Wisconsin's version of a standard UCC provision and its language tracks Section 2-607(3)(a) of the UCC almost identically. *Compare* Wis. Stat. § 402.607(3)(a) *with* U.C.C. § 2-607(3)(a);

*see also* Jane Massey Draper, *Sufficiency and Timeliness of Buyer's Notice Under UCC § 2-607(3)(a) of Seller's Breach of Warranty*, 89 A.L.R. 5th 319 (2001). Courts have repeatedly held that this provision requires pre-suit notice. *See Brame v. Gen. Motors LLC*, 535 F. Supp. 3d 832, 839 (E.D. Wis. 2021); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 717 (N.D. Ill. 2020); *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1055 n.10 (W.D. Wis. 2018). Because Section 402.607(3)(a) requires that a plaintiff provide notice before pursuing a breach of warranty claim, Plaintiff's breach of express warranty claim will be dismissed.

### III. Plaintiff Has Not Stated a Common Law Fraud Claim.

Plaintiff final claim is based on common-law fraud. She claims that Schwan's fraudulently misrepresented that its Mrs. Smith's apple pie contained a "non-de minimis and/or predominant amount of butter," when it "knew the importance of butter" to customers in Wisconsin. (ECF No. 7 ¶¶114–15.) In particular, Plaintiff claims that Schwan's "knew the relevant state laws" that "expressed a public policy that was against passing off" butter-substitutes as predominantly made from butter, and Schwans' records and "the information inconspicuously disclosed to consumers" made it aware of its fraudulent conduct. (*Id.* ¶¶116–17.)

Schwan's argues Plaintiff's fraud claim should be dismissed for two reasons. First, Schwan's argues Plaintiff has failed to plead the alleged fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Second, and in the alternative, Schwan's contends Plaintiff's fraud claim is barred by the economic loss doctrine. (ECF No. 8 at 18–19.) The Court agrees on both points.

Under Rule 9(b), a plaintiff alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A complaint alleging fraud must provide "the who, what, when, where, and how." *United States ex rel. Gross v. AIDS Rsch. All.-Chi.*, 415 F.3d 601, 605 (7th Cir. 2005) (quoting *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003)). Plaintiff's amended complaint fails to allege any particular fraud. Indeed, as discussed in connection with the Section 100.20 claim above, Plaintiff's pleadings establish that Schwan's labeling of its apple pie is not false or reasonably misleading. Plaintiff has therefore failed to state a claim for common-law fraud.

Plaintiff's fraud claim also fails under Wisconsin's economic loss doctrine. In Wisconsin, commercial purchasers of a product cannot recover solely economic losses under tort (as opposed to contract) theories of liability. *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 216

(Wis. 2005) (citing *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 437 N.W.2d 213 (Wis. 1989)). Economic loss encompasses damages resulting from inadequate value because the product is inferior. *Id.* A narrow exception exists to this general rule where fraud is "interwoven" with the inducement of the contract. *Wickenhauser v. Lehtinen*, 734 N.W.2d 855, 868 (Wis. 2007) (citing *Kaloti*, 699 N.W.2d at 219). To invoke this narrow exception, a plaintiff must show (1) an intentional misrepresentation (2) that occurred before the contract was formed and (3) the fraud was extraneous to, not interwoven with, the contract. *Id.* at 869.

In her opposition, Plaintiff has not even attempted to explain why the doctrine is inapplicable or why her claim falls within the fraud-in-the-inducement exception. Her only response is that she has complied with Federal Rule of Civil Procedure 9(b)'s heightened pleading standards. (ECF No. 9 at 16.) The Court declines to do her counsel's work for her.

Schwan's has sufficiently explained that Plaintiff's alleged injuries are purely economic. (*See* ECF No. 7 ¶¶71–73.) And, even if she attempted to invoke the fraud-in-the-inducement exception—which she did not—that exception is inapplicable because any fraud relates to the quality or characteristics of the pie she purchased. *See Castle*, 634 F. Supp. 3d. at 561. Plaintiff admits as much in her response to Schwan's motion to dismiss. (*See* ECF No. 9 at 16.) This claim therefore also fails as a matter of law.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Schwan's Motion to Dismiss, ECF No. 8, is **GRANTED**. The Amended Complaint is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on March 14, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge